Good morning, ladies and gentlemen. Our first case of the morning is case number 116834 in the interest of Jordan G, a minor, People of the State of Illinois Appellant v. Jordan G. Appley. Are you ready to proceed? You may proceed. Chief Justice Garman, and may it please this honorable court, my name is John Walters, and I represent the people, the state of Illinois, and the matter before you. In this particular case, the circuit court judge invalidated the entirety of the aggravated unlawful use of weapons statute. I'll refer to that as the AUUW statute from here on. The court's invalidation was a fundamental misapprehension of Second Amendment jurisprudence, starting with the Seventh Circuit's decision in the case of Moore v. Madigan. In Moore, the Seventh Circuit was concerned about a flat ban, a comprehensive ban on the rights of not only non-law-abiding and irresponsible individuals, but on law-abiding and responsible adults' rights to publicly carry a firearm outside the home. And the reason, the flaw identified by the Seventh Circuit was that the particular provision involved, section A3A, invalidated the rights of law-abiding, responsible citizens. Now, this term, law-abiding, responsible citizens, has its origin in the Watershed case of Heller v. District of Columbia. And this case is the Watershed case on the Second Amendment. The United States Supreme Court made clear that this was the first meaningful examination of the meaning of the Second Amendment. And in that first meaningful examination, the court essentially defined the terms of the Second Amendment's right. And in so doing, they located that right in the rights, as a right belonging to law-abiding, responsible citizens. And the court didn't just stop there. It also identified as examples, and it was not an exhaustive list, but it identified some examples of persons to whom the right would not pertain to. It gave examples, people that are felons, people that are mentally ill. And again, this is including but not limited to. Now, the Seventh Circuit looked upon the Heller decision and actually noted that there are other individuals to whom the Second Amendment right does not pertain to. And among these are children or minors. The Seventh Circuit opinion did not invalidate the entirety of the AUUW statute. In fact, in the last paragraph or so, the Seventh Circuit exhorted the state of Illinois, the Illinois General Assembly, to enact reasonable, reasonable regulation on the rights to publicly carry a firearm outside the home. In this court's decision which followed, this court's decision in People v. Aguilar, which was issued approximately 13 months ago, this court tellingly did not invalidate the entirety of the AUUW statute, which would have made all the sense in the world if that's what the Seventh Circuit had done. But this court was quite particular in limiting its holding to the Class IV form of Section 838. Now, what's really telling about that is that there's a Class II form of the same offense that involves publicly carrying firearms, but this Class II form of the offense only applies to people with prior felony convictions. And the court pointedly, pointedly did not address the validity of that particular provision. It did rule, however, that Section 838, as applied to, well, the court said facially, but with respect to law-abiding responsible citizens, that Section 838, the Class IV form of it, can't be applied, obviously, to law-abiding responsible citizens. The right recognized in both Moore and Aguilar is a right to publicly carry a firearm, and that is a right that belongs to law-abiding responsible citizens. Now, the circuit court in this case struck two provisions in particular that do not have anything to do with the rights of law-abiding responsible citizens. The first of these provisions is Section 83C, which is the FOID Card Act requirement. And essentially, it just requires that an individual have an FOID card. If one has an FOID card, then one cannot be in violation of Section 83C. The other provision in issue is Section 83I, which is the Under 21 provision, and it only affects the rights of, or it only affects minors in the state. It has nothing to do with the rights of law-abiding responsible citizens, adults of this state. These provisions seek to enforce the division that was established by the United States Supreme Court in District of Columbia v. Health, which is that there is a right that pertains to law-abiding responsible citizens, but not one that applies, that same right does not apply to those that are not law-abiding and not responsible. These two provisions are valid. They seek to promote the public safety of the citizens of the state by ensuring that firearms are not in the hands of those who present a heightened risk of danger to the people of the state. Just a point of clarification. Your brief states that Respondo was not charged with unlawful possession of a firearm, pages 15-27. But the record indicates that he was charged with that offense. Is there a discrepancy here? Possibly, Your Honor. I'm not aware of it, but if Your Honor has noted, yes, the minor in this case was charged with unlawful possession of a firearm. Just for clarification, he was so in charge, so charged with that. Would it make a difference if he had not been charged? Of course. Your Honor, I don't see that it makes a difference with respect to the validity of the charges that were struck by the circuit court in this case, which are all with respect to the AUUW statute. What's interesting to note, though, about the unlawful possession of a firearm statute is that one of the issues taken up by this court in Aguilar about 13 months ago was the rights of minors to publicly carry firearms or to possess firearms. And this court said that, in the strongest possible terms, that it was obvious and undeniable that minors do not have the protection of the Second Amendment to carry firearms. That's this court's own ruling 13 months ago. And so, as applied to this particular individual, this minor respondent is 16 years old. The minor respondent in Aguilar was 17 years old. Logically, if the 17-year-old minor respondent in Aguilar did not have a Second Amendment right to bear and keep arms, then a 16-year-old in this particular case can have no more rights than the 17-year-old did in Aguilar. So, it's your position, right, that the provision of the AAUW statute prohibiting individuals from carrying uncased, loaded, accessible firearms comports with the Second Amendment as applied to misdemeanors, right? On probation with conditions that prohibit them from discharging firearms, right? That's your position. In the facts of this particular case, Section 838, we submit is valid as applied, that there is a concern. That's enough for now. What do we do with Aguilar that found that section facially unconstitutional? And the state did have a chance to petition for rehearing in Aguilar to raise the issue that they're raising now and didn't. And as you point out, we did step back a little bit from our initial opinion in Aguilar. So, what do we do with that finding in light of those facts? With respect, Justice Thomas, I submit that the particular issue that you're presented with here, a minor who was given an order of probation by a lawful order of the judge of the state informing him that he was not to possess firearms and that he disregarded that order. That he disregarded a lawful judicial order of the state. But that was an issue that was not, it could not have been in this court's mind when it made a ruling about the statutory provision being facially unconstitutional. And keep in mind that the difference between something being as applied and facial is that if there's any circumstance whatsoever under which a provision can be valid as applied in those particular set of circumstances, then the statute cannot be facially unconstitutional. So, we submit that this was a situation that this court could not have been aware of at the time that it ruled in Aguilar. It wasn't presented with anything like this set of facts where in addition to this being a minor who could not be bothered to get an FOID card, this was a minor who had been given a second chance of rehabilitation. Had been given an order of probation and explicitly spelling out that he was not to possess a firearm and yet he went out and publicly possessed a firearm anyway. With respect, as applied to this particular individual, this is not the conduct of a law-abiding responsible citizen. This is exactly the opposite of law-abiding conduct. Answer the question so that I can be clear on your argument. And I think you're saying two different things. One is the fact that he had been convicted or as a minor had been found to have violated a misdemeanor, a statute that was a misdemeanor. That's one argument. And the second argument is that he was on probation and violated the order that he not have a weapon. Which is it? Is it both? Is one what we should focus on or the other? The point I think to focus on is that he was on probation, that there was an order issued by a judge of the state that he disregarded that order and therefore did not engage in law-abiding conduct and therefore did not have a Second Amendment right. If he doesn't have a Second Amendment right, then the statute cannot be invalid under the Second Amendment. Ultimately, it's a matter of applying logic to this particular set of facts. I think the focus then is more on the fact that there's a lawful order out there that's being disregarded rather than the prior adjudication of wardship under which this minor had been found delinquent. Although I believe that if someone has committed a felony, the Aguilar decision leaves open the possibility, like I said, with respect to the Class II form of the offense of A3A, that the provision could be valid. I would point out that Your Honors have accepted a PLA in the case of People v. Burns that addresses exactly this point, this tension between whether the statute is facially unconstitutional or whether it might be validly applied in certain circumstances, particularly felons. That's the, as I understand it, the exact issue presented to you in the Burns petition for leave to appeal, which you've granted. Are there any cases around the country that deal with the issue of a violation of probation and how that affects the Second Amendment? I'm not sure if they particularly involve violations of probation, but there are certainly, I cited to you a case from Louisiana, the Drotter case, which was a case where an individual was on probation and by the mere fact that he was on probation was prohibited from carrying a firearm, from possessing and carrying a firearm. Actually, the court applied strict scrutiny to that provision and yet still found it to be valid. In that case, I believe that the individual was on probation for a misdemeanor. I'm not completely positive about that. I do know that I did cite other cases where individuals had committed misdemeanors, certain misdemeanors, and yet the provisions that restricted their ability to possess, to bear, and keep arms were held to be valid. Because again, the focus from the source document, the source document of course is the Second Amendment, but really the other source document that we have is the Heller decision because that's the decision that unlocks the meaning of the Second Amendment. And in that case, the court made very clear this distinction, this right belonging to the law binding responsible citizens and a right that did not pertain to those who present a heightened risk of danger to themselves and other people by carrying firearms. This is a very responsible line drawn by the United States Supreme Court. The provisions in issue here, again, A3C and A3I seek to enforce that provision. And by the same token, our argument with respect to Section A3A is of the same, it's cut of the same cloth. It's from the same logic, and that is that those that are not law abiding do not have a right to threaten the public safety of others. That they are not the people who the Second Amendment entrusts to publicly carry firearms, to bear and keep arms. And actually nothing that I say here today impacts or impinges on any way on the law abiding responsible citizens of this state to possess and to publicly carry ready to use firearms. Nothing that I say, none of my arguments impinge on those rights whatsoever. My argument today to you is directed solely to those that are not law abiding, that are not responsible, and that present a heightened risk to the people of this state. We would ask then, respectfully, that this court reverse the circuit court's ruling in this case. That it uphold the constitutionality of provisions A3C, A3I, and also A3A as applied to this limited circumstance where there is not a law abiding responsible individual. And that this court then remand this case for further consideration. Thank you. Thank you. Good morning. Good morning. May it please the court. The state chose... Would you identify yourself counsel? I'm so sorry. My name is Kim Sorrells. I represent Jordan G. Thank you. The state chose to charge Jordan G under the aggravated unlawful use of a weapons section of the statute, which has a blanket prohibition against anyone under the age of 21 from possessing or carrying a firearm, and renders it impossible for someone under the age of 21 from ever validly possessing a firearm. Jordan G was charged substantively in this case under this statute and with a violation of probation. The second amendment recognizes that the right to bear arms is fundamental and applicable to all. Here the circuit court recognized that the ag UUW statute that requires parental consent for anyone under the age of 21 to obtain a FOIA card and the prohibition for any person under the age of 21 from lawfully possessing a firearm in public are impermissible restrictions on the rights guaranteed by the second amendment. In Illinois, the age of majority is 18. Therefore, it is disingenuous to support a law imposing restrictions on those under the age of 21, infringing on a fundamental right. As this court in Aguilar recognized, the ag UUW statute violates the second amendment. The doctrines of severability and voidness and the legislative history of the statute lead to the only possible conclusion that the entire statute is unconstitutional. Your Honors, the ag UUW statutory scheme creates an impossible situation whereby a person under the age of 21 is unable to comply with the law if he or she seeks to carry a firearm lawfully. Based on the statute, a person under the age of 21 cannot lawfully possess a firearm. He can only possess it in one of two circumstances, if he is engaged in hunting or if he is a member of a licensed club or organization created for shooting at targets. But he must have a FOIA card. He can only get a FOIA card with the written consent of a parent or guardian. That parent or guardian must be able to get a FOIA card on their own. If the parent or guardian is unable to get a FOIA card, so is the person under the age of 21. Here, Jordan G. was charged with ag UUW, which facially violates the second amendment. The state notes in its briefs that anyone under the age of 21 can obtain a FOIA card, but that, however, is in very limited circumstances. The statute does not consider self-defense. It does not consider that the second amendment is a fundamental or a core right. It criminalizes behavior for all of those under the age of 21. The failure of the statute to discriminate and its imposition of a blanket age-based restriction violates the second amendment and is unconstitutional. So there is no age restriction that could be constitutional? Given that the age majority in Illinois is 18, possibly 18 and under, but not 21. What about the fact that this young man was 16, how can he raise any concerns about people 18 to 21? How does he have standing to do that? Your Honor, because he was charged under this law. In Aguilar, this court, in the beginning of his decision, noted that if the person charged doesn't have standing, who does? And here, Jordan G. was charged. And as I was thinking about this, if the charge, if the right to vote, not there, the right to vote is a core right. If there was a statute that placed restrictions on those under the age of 21, we would not have any problem saying that's not right. And we would strike the statute. And that's the same situation we're presented with here. The second amendment, as the Heller and McDonnell tell us, is a core fundamental right. And this statute, as it is written, for those under the age of 21, is unconstitutional, basically. It doesn't make sense. It doesn't matter what we do with the application, because there's something here that should disturb our sensibilities. The State argues somewhat differently in terms of the sense of a facial challenge, that if there is a fact pattern in which the statute would be constitutional, then your argument fails. Since you agree that being under 16, there's probably a different kind of analysis that should happen versus someone who's 18 or 19. And I think that's the case. How do you respond to the State's argument, but at least we can identify that there are those for whom the statute would be constitutional? Then the statute should say those under 18. It shouldn't say those under 21. Because now your people ages 18, 19, and 20 can be charged under this statute. So it's facially unconstitutional, not just as applied to the minor in this case. Additionally, since Heller and McDonald tell us that we need to look to the historical context where the Second Amendment was enacted, the age 150 years before the Constitution was written, in 1650, 16-year-olds were expected to bear arms and be able to fight. It is conceivable that 16-year-olds have a right to bear arms. Is that true at the time the Constitution was adopted, that that was considered a core right or core conduct, rights of under 21s to bear arms, in connection with the right given in the Second Amendment? Your Honor, it was true in 1650. And if we employ the historical analysis that Heller employs us to do, it is true in 1650. But is that the only basis you have is from 1650? Yes. Thank you. How does the fact that this person was on probation fit into your argument? The minor was on juvenile court probation. He wasn't just charged with a violation of probation. He was charged substantively with the violation of the Foy Act and substantively with the violation of the Aggravated Unlawful Use of a Child. So those are three charges. Had the state elected to proceed merely on the VOP, we might not be here. Our argument might be a little weaker. But the minor here isn't on adult probation. He's on juvenile probation. He's been a judge, a delinquent. That's what the juvenile statute says. It doesn't necessarily translate to adult cases. So you're not saying that it's inappropriate for any provision that would limit anybody, including convicted misdemeanors or felons, it's not a problem to restrict their ability to carry weapons or possess weapons? I believe that that is the correct statement based on statements in Heller and McDonnell and in Moore v. Mac. Here the state asserts that those under the age of 21 are less mature and more likely to harm others. This is an argument that the McDonnell court rejected when it stated that the right to keep and bear arms, as does other rights, have controversial public safety implications. Here the state charged Jordan G. with violation of the Ag UUW statute, created to reduce gang violence by making it impossible for someone under the age of 21 to lawfully possess a firearm. The McDonnell court addressed this plight when it recognized that the right to possess arms is equally important to individuals that are especially vulnerable to violent crime. This court should likewise reject that argument. The Seventh Circuit properly applied the rulings of Heller, McDonnell and Moore in Moore v. Madigan, which invalidated Illinois' gun laws while ruling that the right to keep and bear arms includes the right to possess them in public, as the need for protection is not limited to the home. The Moore court noted that a woman being stalked by her violent ex-husband when she is outside walking needs protection in that area, and that is the best circumstance as much as, if not more than, the person on the 35th floor of a high-rise apartment in their home. To limit the right to bear arms to the home would divorce the Second Amendment from the right of self-defense. The Moore court further rejected the argument that more guns would lead to more danger, because it stated criminals may become more timid knowing that law-abiding citizens are armed. Thirdly, the Moore court noted that the impact of concealment carry does not show an increase or decrease in the crime rate. Moore invalidated the statute, the statutory scheme in Illinois, and it stayed its ruling to give the legislator an opportunity to reform the law. The General Assembly did not repeal the law. It did not reform the law. It instead enacted an additional licensing restriction. The unconstitutional statutes remain with an added level of bureaucracy. This court should find them unconstitutional. This court followed the lead of Heller, McDonald, and Moore in Aguilar, and it invalidated the comprehensive ban, as there was not a reasonable regulation on firearms outside the home. Contrary to the state's assertion, this court's limitation of its ruling to the class fourth amendment would invalidate the rest of the statute. Those sections were not litigated in the case in Aguilar. Jordan G. was charged with aggravated unlawful use of a weapon because he was under 21, and he carried a firearm without having a valid FOIA card. These statutory provisions and a blanket prohibition for anyone under the age of 21 ignores the protection guaranteed by the second amendment in the rulings of Heller, McDonald, and Moore. In this case, equating everyone under the age of 21 with a minor or a juvenile eviscerates the purpose of the ruling in Aguilar, which distinguished minors from adults. This blanket prohibition is unconstitutional. Your Honor, strict scrutiny should be applied to determine if the statute is constitutional. But even if you apply intermediate scrutiny, it is still unconstitutional. Strict scrutiny should be applied because in footnote 27, the Heller court ruled out rational basis as a proper level of scrutiny for the second amendment. As stated in McDonald, the right to bear arms is a fundamental right. Fundamental rights require showing that the statute is narrowly tailored to serve a compelling state interest. The threshold question then is whether the statute restricts or regulates a fundamental right. For such a statute to be upheld, it must be necessary to promote a compelling state interest and narrowly tailored to effectuate that interest. Here, Your Honors, strict scrutiny applies. The United States Supreme Court has ruled that the right to bear arms is a fundamental right. This court has said that fundamental rights are subject to a strict scrutiny analysis. The Illinois Ag UUW statute, which affects the right to keep and bear arms, a fundamental right, is subject to strict scrutiny. As Heller and McDonald pointed out, there is no compelling governmental interest to render it impossible for those under 21 from lawfully possessing and carrying a firearm. Even intermediate scrutiny application, this statute must follow, as there is not an important governmental interest at stake specific to an age-based restriction. Individuals 18 to 20 can have a gun and a license if they are hunting or in an organization for target practice. All other 18 to 20-year-olds are excluded. These are non-self-defense functions and they are not governed by the Second Amendment. The justification for creating this legislation is contrary to the decision in Moore. The Second Amendment gives the same rights to all young adults, even those living in high-crime areas and who are the most frequent targets of violence. Your Honors, we ask that you uphold the circuit court's ruling in finding that the entire Ag UUW statute is unconstitutional. Thank you. Briefly, Your Honors, my respondent's position is inherently contradictory. If a provision only applies to a certain group of individuals, in this case under 21, it can't be a blanket prohibition. It was a blanket prohibition that was made in a blanket prohibition. And if you notice, Section A3A is a little bit different than these other provisions. These other provisions, A3C and A3I, specifically apply to a defined group. The FOID card provision only applies to those that don't have an FOID card. The under 21 provision, obviously, self-defined, only applies to those that are under 21. This is not a blanket prohibition. And so it can't be asserted that it is a blanket prohibition just because it applies to a defined group. With respect to the rights or the age of majority, the defining time period in this case is the enactment of the Second Amendment, which was 1792. My respondent asserts a right somehow that existed in 1650. But I would point out to this Court that in 1792, the General and Chief of the United States of America and the first President of the United States of America, George Washington, decided that the ideal age for young soldiers to begin service was 18, not 16. And it was upon his advice that the first Congress of the United States enacted the Federal Militia Act, which again, started with age 18, not 16. Now this is extremely important because, as I've already alluded to, the statute, as you argued, as I've already pointed out, this statute, based in this Court's own language in Aguilar, is undeniably valid as applied to 16-year-olds. This Court has said, as recently as in Ray Derricotte G., that an individual cannot assert the rights of others that the statute may or may not be conceivably applied to others if the statute can be validly applied to that individual or individuals similarly situated. And in this case, there's no doubt that this provision, that a provision barring firearm use and possession by those under the age of 18 can be validly applied to this 16-year-old. So the justiciability of the particular argument that my respondent is raising to you is a question for this Court to decide and really must be decided before this Court engages in the question of whether the rights of 18 to 16 are involved. But if the Court does somehow find that the issue is justiciable, there is no doubt that this provision can be applied to 18 to 20-year-olds because the common law, because President George Washington, because the first Congress in the United States of America recognized that the age of majority was 21 and not 18, and that the change in the Constitution was a fairly recent modification. And in fact, really irrelevant for the purposes of the meaning of the question, but it's relevant to the intent at the time that the provision, that the amendment was enacted. That's what governs. And in this case, the common law, the authorities that I've mentioned recognized that the age of majority was 21. If you are to look at, examine the rights of 18 to 20-year-olds, I want to just clarify something. It is not impossible for 18 to 20-year-olds to use, to bear and keep arms under certain circumstances. While there may not be a constitutional right, the General Assembly here has provided many opportunities for those 18 to 20-year-olds to bear and keep arms, usually under the guide of a responsible adult. The FYD card provision allows for a parent or guardian to sign off on a minor's application for an FYD card. And in the rare, or in the situation where the Director of State Police does not allow an FYD card application, the minor still has a safety valve, as this court recognized in quorum. The minor can still go directly to the Director of State Police and appeal a rejection of an FYD card. And if that were not enough, if the minor is unhappy with that decision, the minor can then go on to seek remedy in the courts of the state. So there is a safety valve for those under 21 to receive an FYD card. And the FYD card doesn't just, or I'm sorry, the under 21 provision doesn't simply allow hunting and target shooting. It also expressly does not apply, the AUW statute expressly does not apply to certain employments that require the use of a firearm, like serving as a peace officer, serving as a deputy sheriff. It doesn't apply to members of the military. These provisions do not ultimately result in a situation where 18 to 20-year-olds are blanketly prohibited under all circumstances from bearing and keeping arms. Quite the contrary, there are a number of exceptions written into the statute that enable 18 to 20-year-olds under responsible guidance to bear and keep arms. Defendant, or I'm sorry, minor respondent refers to McDonald and continues to overlook a key point in McDonald, and that is McDonald reiterated the point that I brought to your attention in Heller, that this right, the Second Amendment right, is a right that belongs to the law-abiding and responsible citizens of the state of Illinois and to the 50 states. It is not a right of those who present a heightened risk of danger to the people. And with that... May I ask you one question? Yes. Are you arguing that a juvenile who's been adjudicated delinquent and or violates a violation of a juvenile probation has forfeited their Second Amendment rights for the rest of their lives? No. For instance, the FYD Card Act, I think, allows for an application, even under circumstances where there's been a prior conviction, for someone to seek to get an FYD card from the Director of the State Police, number one. Number two... Somehow it's related to the FYD card? Well, clearly in this case we're dealing with a minor. But with respect to this particular section, A3A, and its validity as applied to this particular minor, given the circumstance that this minor is not law-abiding, that's what makes A3A valid as applied to this particular minor with respect to that particular statutory provision. Again, if there are no other questions, the people respectfully request that this Court reverse the Circuit Court's ruling and remand for further proceedings. Thank you very much. Case number 116834, Henry, the interest of Jordan G., a minor, people of the State of Illinois v. Jordan G., will be taken under advisement by the Court as agenda number one. Mr. Walters and Ms. Sorrell, thank you for your arguments today. You're excused at this time.